UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL VARGAS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DOUGLAS KNIGHT & ASSOCIATES, INC., et al.,<br><br>　　　　Defendants. | Case No. 21-cv-01668-JCS<br><br>**ORDER TO SHOW CAUSE AND CONTINUING CASE MANAGEMENT CONFERENCE SET FOR JUNE 4, 2021** |

## I.　INTRODUCTION

Plaintiff Manuel Vargas, pro se, applied to proceed in forma pauperis and the Court granted his application. *See* Docket No. 4. The Court now must review the sufficiency of Plaintiff's complaint to determine whether it satisfies 28 U.S.C. § 1915(e)(2)(B). Because Plaintiff has declined consent to magistrate jurisdiction pursuant to 28 U.S.C. § 636(c), the undersigned intends to reassign this case to a district judge with a report and recommendation addressing the adequacy of Plaintiff's claims. For the reasons set forth below, the Court finds that Plaintiff's claims are insufficiently pled in a number of respects. Therefore, Plaintiff is ORDERED TO SHOW CAUSE why this case should not be dismissed. Plaintiff may file either an amended complaint or a response to this order addressing why his complaint is sufficient, no later than **June 1, 2021**. The Case Management Conference set for **June 4, 2021** is continued to **August 27, 2021**.

## II.　THE COMPLAINT[1]

Plaintiff, who is a resident of Contra Costa County, brings this action under the Fair Debt

---

[1] Because the factual allegations of a plaintiff's complaint are generally taken as true in the context of determining whether the complaint states a claim, this section summarizes Plaintiff's

Collection Practices Act ("FDCPA"), and the Telephone Consumer Protection Act ("TCPA"), naming as defendants Douglas Knights & Associates,[2] David L. Maketon and Leyla Soto. Plaintiff alleges that "[t]he Defendants are a 3rd party debt collector" and that he has never had "any contractual agreement for credit, loans or services relationship with the Defendant." *Id.* ¶¶ 1, 2. He further alleges that even if he "did have such an agreement . . . the alleged debt is not in question here." *Id* ¶ 3. Rather, "[t]he issue at hand in this petition concerns how the alleged debt was or was not validated, and the wrongful actions of the Defendant in an attempt to collect the alleged debt, and the abusive number of telephone calls made by Defendant." *Id.*

In a section entitled "discussion," Plaintiff's Complaint includes the following factual allegations:

> 4. On October 5th, 2020 at 1:29 PM, Defendant contacted Plaintiff by telephone at Plaintiff's cell phone. Defendant did not identify herself, and the call was disconnected shortly after Defendant asked to speak with Plaintiff. Only a few minutes later on the same day, at 1:32 PM, Defendant called again and left a message on Plaintiff's voicemail asking to speak with Plaintiff but Defendant did not identify herself. The Defendant called Plaintiff again another seven times until December 19th, 2020. During these additional seven calls, Plaintiff either answered the phone and Defendant disconnected the call shortly after asking to speak to Plaintiff without identifying herself, or Defendant left a message on Plaintiff's voicemail asking to speak to Plaintiff without identifying herself.
>
> 5. After these calls, Plaintiff did some investigative research to determine who was calling from the numbers 941-744-1052 and 803-419-7575. Plaintiff easily determined that the calls were originating from a company called "Douglas Knights & Associates", a third-party debt collector, bonded in the State of Florida and listed on the Florida Secretary of State's website. These phone numbers are well documented as belonging to Defendant. Plaintiff realized that these phone calls were an attempt to collect an alleged debt.
>
> 6. On December 17th, 2020 Plaintiff sent a letter of validation to the Defendant, at the Defendant's address listed on the Florida's Secretary of State's website, asking Defendant to provide proof of the alleged debt along with a limited cease and desist statement telling the Defendant not to contact the Plaintiff at his place of work or by telephone, only to contact the Plaintiff at his home by US Mail. This letter was sent by the Plaintiff via certified US Mail (Certified Mail

---

allegations as if true. Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case.

[2] Based on letters attached to the Complaint, discussed below, it appears that Plaintiff intends to sue Douglas, Knight & Associates rather than Douglas Knights & Associates.

> Number 70201810000103027460). Defendant called Plaintiff another two times between December 19th, 2020 and a few minutes later at 9:25 AM, with the same results as described above before Defendant received the letter. The Defendant received the letter on December 23rd , 2020 at 11:15 AM EST.

Complaint ¶¶ 4-6.

The Complaint asserts nine claims, eight under the FDCPA and one under the TCPA. In Claim One, Plaintiff asserts a claim for "Failure to Cease and Desist Phone Calls" in violation of 15 U.S.C. § 1692c, alleging that "[o]n December 19th, 2020 at 9:25 AM, after receiving the limited cease and desist letter, Defendant called Plaintiff again, and Defendant again disconnected the call shortly after asking to speak to Plaintiff." *Id.* ¶ 7. Plaintiff goes on to allege, "Defendant clearly violated the limited cease and desist letter received by Defendant on December 17th, 2020, by contacting the Plaintiff a number of times by phone instead of US Mail." *Id.* On this claim, Plaintiff seeks damages in the amount of $3,000, that is, "$1,500.00 for each of the two calls in violation of the limited cease and desist letter per 15 U.S.C. §1692c." *Id.* ¶ 8.

In Claim Two, Plaintiff asserts a claim entitled "Failure to Disclose Communications As an Attempt to Collect a Debt" in violation of 15 U.S.C. § 1692e. In support of this claim, Plaintiff alleges that "[o]n December 7th, 2020, and on December 19th, 2020, Defendant called Plaintiff on Plaintiff's cell phone and spoke with Plaintiff. On both of these phone calls, Defendant failed to advise the Plaintiff of his civil rights under the law by not invoking the consume warning 'this is an attempt to collect a debt and any information will be used for that purpose.' " *Id. ¶* 9. He seeks $3,000 in damages on this claim, that is, $1500.00 for each of the two calls when Defendant failed to disclose that the communication was from a debt collector, in violation of 15 U.S.C. §1692e. *Id.* ¶ 10.

In Claim Three, Plaintiff asserts a claim for "Failure to Validate" in violation of 15 U.S.C. §1692g. Plaintiff alleges in this claim that "[t]he Defendant" violated this provision "by not providing proof of the alleged debt as requested in the Plaintiff's letter of December 17th, 2020, by engaging in continuous collection activity after receipt of Plaintiff's letter, without ever validating the debt." *Id.* ¶ 11. On this claim, Plaintiff seeks "$1,500.00 for failure to validate the alleged debt and subsequently engaging in continuous collection activity, in violation 15 U.S.C.

§1692g." *Id.* ¶ 12.

In Claim Four, Plaintiff asserts a claim for "Overshadowing" in violation of 15 U.S.C. §1692g. This claim includes the following allegations:

> THE DEFENDANT SENT PLAINTIFF A COLLECTION LETTER DATED JANUARY 22, 2010 STATING THAT PLAINTIFF HAD A "BALANCE DUE OF $2,521.64." DEFENDANT INCLUDED LANGUAGE THAT OVERSHADOWED THE CONSUMER WARNING THAT THE LETTER WAS AN ATTEMPT TO COLLECT A DEBT, AND ALSO OVERSHADOWED THE PLAINTIFF'S RIGHT TO DISPUTE THE DEBT OR REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR. DEFENDANT MADE THE FOLLOWING STATEMENTS IN THE LETTER: "DOUGLAS KNIGHTS & ASSOCIATES I AM CONTACTING YOU IN THE REFERENCE TO YOUR CORRESPONDENCE RECEIVED ON 1/21/2021. MY OFFICE PREVIOUSLY MAILED SUPPORTING DOCUMENTS TO THE ADDRESS AS ADVISED. I HAVE ATTACHED THE DOCUMENTATION AGAIN IF FOR SOME REASON YOU DID NOT RECEIVE THEM, PLEASE CONTACT MY OFFICE BACK SO WE CAN DISCUSS A PAYMENT ARRANGEMENT IF NOT A SETTLEMENT TO RESOLVE THIS MATTER.

*Id.* ¶ 13 (citing Complaint, Ex. 1). On this claim, Plaintiff "demands judgment for $3,000 for Defendant's use of overshadowing language in Defendant's collection letters." *Id.* ¶ 14.

Two letters are attached to the Complaint as Exhibit 1 but neither precisely matches the language quoted in Paragraph 13. The first attached letter, dated December 23, 2020 ("the December 23, 2020 Letter"), is from "Douglas, Knight & Associates, Inc. / ATTN: Leyla Soto" and addressed to Plaintiff. The letter contains the following caption:

> OUR CLIENT: SENTRY INSURANCE CO
> OUR CONTROL NUMBER: 69259-311529
> DATE OF LOSS: 10/15/ 2019
> AMOUNT OF CLAIM: $2521.64
> BALANCE DUE: $2521.64

Complaint, Ex. 1 (December 23, 2020 Letter). The letter states:

> Enclosed please find the supports for the accident claim. The claim amount reflects the amount paid by our client Sentry Insurance for the loss of 10/15/2019, in which we find that there was no insurance coverage for this date of loss.
>
> If there is insurance feel free to provide the proof to our office for the resolution on this claim.

4

*Id.* It is signed by "Leyla Soto – Subrogation Specialist." *Id.*

The second letter attached to the Complaint, dated January 22, 2021 ("the January 22, 2021 Letter"), is from "Douglas, Knight & Associates, Inc. / ATTN: Ashley Thomas" and is also addressed to Plaintiff. It contains the same caption as the December 23, 2020 Letter (quoted above) and states as follows:

> I am contacting you in reference to your correspondence received on 1/21/2021. My office previously mailed supporting document to the owner as advised.
>
> I have attached the documents again if for some reason you did not receive them. I have closed the file and sent it back to my client.
>
> Tracking# 7015 1520 0002 4233 0962

*Id.*, Ex. 1 (January 22, 2021 Letter). The letter is signed by "Ashley Thomas – Subrogation Specialist." *Id.*

In Claim Five, Plaintiff asserts a claim for violations of the TCPA based on allegations that "[t]he Defendant has called the Plaintiff with unsolicited phone calls a number of times" and that he "has been denied use of his cell phone service based on the fact the Defendant has cost the Plaintiff 'money' in the term of minutes used." Complaint ¶ 15. Plaintiff then alleges, "Defendant called Plaintiff ten (2) times during the time period of October 7, 2020 to December 19th, 2020, in an attempt to collect an alleged debt." *Id.* ¶ 16. He continues, "In summary, Plaintiff answered the [calls] two times (2) at a cost to Plaintiff, and Plaintiff retrieved five (5) voicemail messages at a cost to Plaintiff, for a total of seven (10) phone calls from Defendant which resulted in a cost to Plaintiff." *Id.* ¶ 17. On this claim, Plaintiff seeks $15,000, "which is $1,500.00 per call Penalty for each of the one hundred and five calls." *Id.* ¶ 18.

In Claim Six, Plaintiff asserts a claim for "Furnishing Certain Deceptive Forms" in violation of 15 U.S.C. §1692j. This claim quotes the same letter that is quoted in Paragraph 13 (see above). *Id.* ¶ 19. On this claim, Plaintiff seeks judgment in the amount of $3,000. *Id.* ¶ 20.

In Claim Seven, Plaintiff asserts a claim for "Harassment or Abuse" in violation of 15 U.S.C. §1692d, alleging that "[t]he Defendant . . . threaten[ed] Plaintiff to place a hold on his driver license if he did not pay the debt or make payment arrangements." *Id.* ¶ 21. Plaintiff seeks

5

1 | $4,500 in damages on this claim. *Id.* ¶ 22.

In Claim Eight, Plaintiff asserts a claim for "False or Misleading Representations" in violation of 15 U.S.C. § 1692e. Like Claim Seven, this claim is based on the allegation that "[t]he Defendant . . . threaten[ed] Plaintiff to place a hold on his driver license if he did not pay the debt or make payment arrangements." *Id.* ¶ 23. Plaintiff seeks $10,500 in damages on this claim. *Id.* ¶ 24.

In Claim Nine, Plaintiff asserts a claim for Unfair Practices in violation of 15 U.S.C. §1692f based on the allegation that "[t]he Defendant . . . threaten[ed] Plaintiff to place a hold on his driver license if he did not pay the debt or make payment arrangements and charg[ed] an unconscionable amount to what they purchased the debt for." *Id.* ¶ 25. On this claim, Plaintiff seeks $3,000 in damages. *Id.* ¶ 26.

In his Request for Relief, Plaintiff seeks "judgment in the amount of $46,500 plus all costs of this action along with punitive damages based on harassment, annoyance and intimidation in the amount of $150,000.00." Complaint, p. 13.

## III. ANALYSIS

### A. Legal Standards Under 28 U.S.C. § 1915 and Rule 12(b)(6)

Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave to proceed in forma pauperis, courts must engage in screening and dismiss any claims which: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).

To state a claim for relief, a plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Diaz v. Int'l Longshore and Warehouse Union, Local* 13, 474 F.3d 1202, 1205 (9th Cir. 2007). In determining whether a plaintiff fails to state a claim, the court takes "all allegations of material fact in the complaint as true and construe[s] them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975

(9th Cir. 2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions [and] mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal quotation marks omitted). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Id*. at 678 (citing *Twombly*, 550 U.S. at 570).

"Because Rule 12(b)(6) focuses on the 'sufficiency' of a claim rather than the claim's substantive merits, 'a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss,' *Van Buskirk v. Cable News Network, Inc*., 284 F.3d 977, 980 (9th Cir. 2002), including the exhibits attached to it." *DeLeon v. Colon*, No. 320CV00791AJBBGS, 2021 WL 1626339, at *2 (S.D. Cal. Apr. 27, 2021) (citing Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc*., 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.))). "However, exhibits that contradict the claims in a complaint may fatally undermine the complaint's allegations." *Id.* (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including. . . details contrary to his claims.") (citing *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."))); *Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (courts "may consider facts contained in documents attached to the complaint" to determining whether the complaint states a claim for relief)).

Where the complaint has been filed by a pro se plaintiff, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d

7

338, 342 (9th Cir. 2010). "A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies in the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute, as recognized in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc). Further, when it dismisses the complaint of a pro se litigant with leave to amend, "the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). "Without the benefit of a statement of deficiencies, the pro se litigant will likely repeat previous errors." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

### B. FDCPA Claims

#### 1. Legal Standards Governing FDCPA Claims

The purpose of the FDCPA is to combat "use of abusive, deceptive, and unfair debt collection practices." *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098 (9th Cir. 1996) (citing 15 U.S.C. § 1692(e) (providing that one of the purposes of the FDCPA is to "eliminate abusive debt collection practices by debt collectors . . . ")). To accomplish this goal, the FDCPA places limits on the manner in which debt collectors may communicate with consumers, 15 U.S.C. § 1692c; prohibits debt collectors from "using any false, deceptive or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e; requires debt collectors to meet certain validation requirements, 15 U.S.C. § 1692g; and prohibits the furnishing of "certain deceptive forms," 15 U.S.C. § 1692j.

To state a claim under the FDCPA, "a plaintiff must allege facts that establish the following: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Adesokan v. U.S. Bank, N.A.*, No. 11–cv–01236–LJO–SKO, 2011 WL 5341178, at *4 (E.D. Cal. Oct. 31, 2011) (citation omitted).

### 2. Whether Plaintiff Has Alleged that Any Defendant Was Attempting to Collect a "Debt" within the Meaning of the FDCPA

Under the FDCPA, "[t]he term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Here, the letters attached to the Complaint indicates that Douglas, Knight & Associates is an insurance subrogation agent seeking to collect on behalf of an insurance company for an uninsured loss that was paid out by its client. There is no allegation suggesting that the amount it seeks to collect from Plaintiff arises out of a consumer "transaction" as is required under the FDCPA. Rather, the letters Plaintiff attached to his Complaint indicate that Plaintiff owes this money as the result of a tort, which courts have held does *not* satisfy the "transaction" requirement of the FDCPA. *See Hawthorne v. Mac Adjustment, Inc*., 140 F.3d 1367, 1371 (11th Cir.1998) (holding that "debt" under the FDCPA is limited to liability arising out of consensual, consumer transactions, and not tortious activity); *Fleming v. Pickard*, 581 F.3d 922, 926 (9th Cir. 2009) (citing *Hawthorn's* holding with approval).

In *Hawthorn*, for example, the plaintiff sought to assert FDCPA claims against a subrogation agent based on its efforts to collect from the plaintiff an insurance payout that had been made to a third party, where the plaintiff had been in an accident with the third party and was uninsured. 140 F.3d at 1369. The Court dismissed the plaintiff's claims, finding that the defendant (Mac Adjustment) was not seeking to collect a "debt" within the meaning of the FDCPA, reasoning as follows:

> [A]t a minimum, a "transaction" under the FDCPA must involve some kind of business dealing or other consensual obligation. Because Hawthorne's alleged obligation to pay Mac Adjustment for damages arising out of an accident does not arise out of any consensual or business dealing, plainly it does not constitute a

9

> "transaction" under the FDCPA. Moreover, the fact that Mac Adjustment may have entered into a contract with the insurer for subrogation rights does not change the fact that no contract, business, or consensual arrangement between Hawthorne and the damaged party, its insurer, or Mac Adjustment exists. Consequently, the FDCPA does not apply because this is not a transaction.

140 F.3d at 1371.

Therefore, the Court concludes that Plaintiff has not alleged facts showing that any of the named Defendants was engaged in the collection of a "debt" and that all of Plaintiff's FDCPA claims fail for that reason. Plaintiff's FDCPA claims are also defective in a number of additional respects, as set forth below.

### 3. Claim One (Failure to Cease and Desist Phone Calls)

In Claim One, Plaintiff alleges that Defendants violated the FDCPA, 15 U.S.C. § 1492c, by failing to cease and desist telephone calls by calling him "a number of times" after receiving his letter requesting that they cease communicating with him by telephone. Complaint ¶ 7. Under Section 1492c(c), "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt" with limited exceptions. Plaintiff has not adequately alleged a violation of this provision because the only telephone call he identifies in support of this claim was on December 19, 2020. *Id.* Although he alleges that this was "after" Defendants received his cease and desist letter, Plaintiff alleges elsewhere in the Complaint that Defendants did not receive that letter until December 23, 2020. *Id. ¶* 6. Therefore, Plaintiff has not adequately alleged a violation of this section of the FCPA as to any defendant. As to Defendants Soto and Maketon, this claim fails for the additional reason that no facts are alleged suggesting that either ever made any telephone calls to Plaintiff.

### 4. Claim Two (Failure to Disclose Communications as an Attempt to Collect a Debt)

In Claim Two, Plaintiff alleges Defendants violated the FDCPA,15 U.S.C. §1692e, by failing to advise him in telephone calls on December 7, 2020 and December 19, 2020, that the telephone calls were made for the purpose of collecting a debt. Under Section 1692e, "[a] debt

collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." In addition, Section 1692e(11) makes it a violation to "fail[ ] to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector . . . ." Here, this claim is inadequately alleged because, as discussed above, Plaintiff has not alleged facts showing that any Defendant is a "debt collector" within the meaning of the FDCPA or that the money Defendants allegedly are trying to collect from Plaintiff constitutes "debt" under the FDCPA.

### 5. Claim Three (Failure to Validate)

Plaintiff alleges that Defendants violated the FDCPA, 15 U.S.C. §1692g, by failing to validate the alleged debt after he requested that they do so in his December 17, 2020 letter. Complaint ¶ 11. Section 1692g governs the validation of debts and requires that a debt collector must within five days of its initial communication with the consumer provide a notice containing certain information. 15 U.S.C. § 1692g(a). Among other things, the notice must inform the consumer "that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;" and "that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(a)(3) & (4). Section 1692g(b) further provides that "[i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor,

is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b).

Under Section 1692g, once a debt collector has received a request that the debt be verified, it "has a choice": it can either provide the requested validation or cease its collection efforts. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 940 (9th Cir. 2007). Even assuming any named Defendant falls within the FDCPA's definition of a "debt collector" or that the money they are allegedly seeking to collect is a debt, Plaintiff's claim fails. First, the December 23, 2020 Letter appears to provide the verification that Plaintiff allegedly requested in his December 17, 2020 letter and does not request payment. Second, there are no allegations in the Complaint identifying any telephone calls or written collection efforts that were made *after* Defendants allegedly received Plaintiff's letter requesting verification on December 23, 2020. Therefore, Plaintiff has not alleged a violation of the FDCPA based on failure to validate any debt.

### 6. Claim Four (Overshadowing)

Plaintiff asserts a claim for "overshadowing" based on a letter allegedly dated January 22, 2010. Complaint ¶ 13. A claim under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Therefore, this claim is untimely as alleged. Assuming the date of the letter quoted in the Complaint is a typographical error and that the letter was sent within one year of the filing of the Complaint, the claim nonetheless fails.

"Overshadowing" claims are governed by 15 U.S.C. § 1692g, which requires that the information provided in a debt collection letter "must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency" such that a "least sophisticated debtor" would be misled or confused. *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997) (internal quotations and citation omitted). Plaintiff alleges that the quoted letter overshadows the fact that it is was an attempt to collect as well as Plaintiff's right to request validation of the debt. As discussed above, however, the allegations in the Complaint and the attached letters indicate that the money Douglas, Knight & Associates was trying to collect was not a "debt" for the purposes of the FDCPA. Nor is it apparent that the letter quoted in the Complaint would violate the FDCPA's "overshadowing" prohibition even if it were a debt collection letter given that it is, on its face, a response to Plaintiff's request for verification of the

12

amount owed and appears to provide documentation of that amount. To the extent Plaintiff intends to assert this claim based on the letters attached to the Complaint instead of the communication quoted in the body of the Complaint, the claim fails for the same reasons.

### 7. Claim Six (Furnishing Certain Deceptive Forms)

In support of Claim Six, Plaintiff quotes the same letter he quotes in connection with Claim Four to establish that Defendants have violated the FDCPA, 15 U.S.C. § 1692j. Complaint ¶ 19. That section provides, in part, as follows:

> (a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

15 U.S.C. § 1692j(a). The Ninth Circuit has explained the purpose of this provision of the FDCPA as follows:

> Section 1692j prohibits a practice known as flat-rating, whereby a third-party (usually for a flat rate) sells form letters to a creditor, "which create[ ] the false impression that someone (usually a collection agency) besides the actual creditor is 'participating' in collecting the debt." *White v. Goodman*, 200 F.3d 1016, 1018 (7th Cir. 2000) (quoting 15 U.S.C. § 1692j(a) ); *see also Nielsen v. Dickerson*, 307 F.3d 623, 639 (7th Cir. 2002) ("This provision bars the practice commonly known as 'flat-rating,' in which an individual sends a delinquency letter to the debtor portraying himself as a debt collector, when in fact he has no real involvement in the debt collection effort . . . ."). As the Seventh Circuit has described, the deception in such a practice lies in giving debtors the false impression that, by involving a third party in the collection process, "the creditor does not intend to drop the matter," and "Congress's concern was that such deception might induce debtors to abandon legitimate defenses." White, 200 F.3d at 1018. Because a third-party flat-rater does not participate in the debt-collection process, it, in effect, simply allows the creditor to use its name "for its intimidation value." *Nielsen*, 307 F.3d at 639.

*Echlin v. PeaceHealth*, 887 F.3d 967, 973 (9th Cir. 2018).

Here, Plaintiff has not alleged facts establishing that any letter involving a "debt" as defined by the FDCPA was sent to Plaintiff, much less that those letters were designed or used as part of any flat-rating scheme. Therefore, this claim is not sufficiently alleged.

13

### 8. Claim Seven (Harassment or Abuse)

Plaintiff alleges that "[t]he Defendant" engaged in harassment or abuse under the FDCPA, 15 U.S.C. § 1692d, by "threatening Plaintiff to place a hold on his driver['s] license if he did not pay the debt." Complaint ¶ 21. The FDCPA prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt." 15 U.S.C. § 1692d. " '[C]laims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse.' " *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1226 (E.D. Cal. 2010) (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir.1985); and citing *Clomon v. Jackson*, 988 F.2d 1314, 1318–19 (2d Cir. 1993)).

While the allegation that a debt collector threatened to place a hold on an individual's driver's license if a debt was not paid would likely be sufficient to allege a violation of Section 1692d, Plaintiff here has not alleged any facts showing that Defendants are "debt collectors" under the FDCPA. The allegations as to this claim fall short for the additional reason that Plaintiff fails to allege any specific facts as to the alleged threat, including which defendant allegedly made the threat, when the threat was made, and whether it was oral or in writing. The Court notes that neither of the letters that are attached to the Complaint contains such a threat.

### 9. Claim Eight (False or Misleading Representations)

Claim Eight mirrors Claim Seven except that it is asserted under 15 U.S.C. § 1692e, which prohibits false or misleading statements by debt collectors. This claim fails for the same reason Claim Seven is inadequately pled.

### 10. Claim Nine (Unfair Practices)

In Claim Ten Plaintiff asserts another claim based on an alleged threat to place a hold on his driver's license if he does not pay his debt, this time under 15 U.S.C. § 1692f, which prohibits a debt collector from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." This claim fails for the same reasons Claims Seven and Eight fail.

### C. TCPA Claim (Claim Five)

In Claim Five, Plaintiff asserts a claim under the TCPA based on the allegation that "[t]he

Defendant has called the Plaintiff with unsolicited phone call a number of times" and that in doing so it has denied Plaintiff "use of his cell phone service based on the fact the Defendant has cost the Plaintiff 'money' in the term of minutes used." Complaint ¶ 15. "The TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls." *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 954 (9th Cir. 2009) (citation omitted). It does so by placing restrictions on the use of Automatic Telephone Dialing Systems ("ATDS"). It provides, in relevant part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
>
> . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

47 U.S.C. § 227(b)(1)(A)(iii). "The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

Plaintiff has not adequately alleged a TCPA claim because he does not allege that he received any telephone call that was made using an automated telephone dialing system. As to Defendants Soto and Maketon, the claim fails for the additional reason that the Complaint contains no specific allegations suggesting that either of these defendants ever made *any* telephone call to Plaintiff.

**IV.   CONCLUSION**

For the reasons stated above, Plaintiff is ORDERED TO SHOW CAUSE why this case should not be dismissed on the basis that he has failed to allege any valid claim. Plaintiff may

15

respond by filing either an amended complaint that addresses the deficiencies discussed above or a response that addresses why his current complaint is sufficient. Plaintiff's response shall be filed by **June 1, 2021**. If Plaintiff does not file a response by that date, the case will be reassigned to a United States district judge with a recommendation that it be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). The undersigned also intends to recommend that the district judge who is assigned to handle *Campbell v. Douglas Knight &* Associates, 21-cv-1667 JCS relate that case to this one as the claims in the two cases are almost identical.

Any amended complaint must include the caption and civil case number used in this order (21-cv-01667) and the words FIRST AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the previous complaint, any amended complaint may not incorporate claims or allegations of Plaintiff's original complaint by reference, but instead must include all of the facts and claims Plaintiff wishes to present and all of the defendants he wishes to sue.

Plaintiff, who is not represented by counsel, is encouraged to consult with the Federal Pro Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance. The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102. The Oakland office is located in Room 470 S on the 4th floor at 1301 Clay Street, Oakland, CA 94612. Appointments, which are currently being conducted by telephone or video-conference, can be made by calling (415) 782-8982 or emailing federalprobonoproject@sfbar.org. Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.

**IT IS SO ORDERED.**

Dated: May 3, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge